[NOT FOR PUBLICATION]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| LINDA DELAURI, | : |
| | : |
| Plaintiff, | : Civil Action No. 05-4165 (FLW) |
| | : |
| v. | : |
| | : **AMENDED OPINION** |
| THE NEW JERSEY DIVISION OF | : |
| STATE POLICE, et al., | : |
| | : |
| Defendants. | : |
| | : |

**WOLFSON, United States District Judge**

Presently before the Court is a Motion for Summary Judgment by Defendants, the New Jersey Division of State Police ("State Police"), New Jersey State Troopers Michael Kassey ("Kassey"), Michael Lamonaco ("Lamonaco"), Richard Bertrand ("Bertrand")[1], and Eric Peterson ("Peterson") (collectively, "Defendants" or "troopers"),[2] to dismiss the Complaint of Plaintiff Linda DeLauri ("Plaintiff" or "Mrs. DeLauri").  This action arises out of the events that

---

[1]Plaintiff incorrectly pled Defendant Bertrand as Bertran.

[2]Plaintiff makes no allegations against Defendants Bertrand and Peterson.  Therefore, the Court dismisses these Defendants from this case.

-1-

occurred on August 19, 2003, when Kassey, Lamonaco, Bertrand, and Peterson arrived on the scene of a domestic dispute at Plaintiff's residence in Liberty Township, New Jersey.  Plaintiff's § 1983 claims are based on allegations that Defendants violated Plaintiff's constitutional rights by invading her privacy, where Defendants allegedly "forced the plaintiff to disrobe, become naked, and continued to shine a flashlight upon her until such time as she became dressed again."[3]  Plaintiff also seeks punitive damages in this case.  Defendants moved for summary judgment because, inter alia: (1) Defendants are entitled to qualified immunity on all claims alleging invasion of her right to privacy because they had probable cause, or an objectively reasonable belief in the existence of probable cause, to arrest Mrs. DeLauri and Defendants' conduct in effectuating the arrest of Mrs. DeLauri was objectively reasonable, and (2) Defendants did not act with the "evil motive" or "callous indifference" required to state a claim for punitive damages.  In light of last week's Supreme Court decision in Pearson v. Callahan, the Court shall modify the reasoning set forth in its previous Opinion.  However, such analysis does not change the Court's holding; Defendants' Motion for Summary Judgment is granted.

## I.      PROCEDURAL HISTORY AND BACKGROUND

Defendants admit to Plaintiff's statement of material facts for the purposes of the Motion, which are incorporated as follows; the Court notes where the facts are disputed.

During the late evening of August 19, 2003, in response to a 911 call from Anthony DeLauri, Plaintiffs' husband, claiming an incident of domestic violence, members of the New

---

[3]Plaintiff now admits that she was not forced to disrobe, but rather that she wanted to change her clothes.  However, Plaintiff argues that her rights were still violated because Defendants refused to turn around while she was changing, despite her repeated requests, and instead maintained their flashlights on her body the entire time.  See Parts I, II, infra.

Jersey State Police were dispatched to Plaintiff's home.  Compl. ¶ 8.  The domestic disturbance involved a knife in which Mrs. DeLauri was cut.  See CAD Abstract Report, Incident No. B150/2003-00009576.  Kassey arrived with Lamonaco and within minutes Bertrand arrived with Peterson.  Id.  Upon the troopers' arrival, Mr. DeLauri advised the troopers that Mrs. DeLauri had been drinking, that she was inside with a knife, that she had used that knife to cut herself, and that she started to go after him with it.  Anthony DeLauri Deposition Transcript ("DeLauri Dep.") D-1.  Mr. DeLauri informed Kassey and Lamonaco that he was a Sheriff's Officer for Warren County and that there were weapons located in his home.  Declaration of Trooper Michael Lamonaco ("Lamonaco Decl.") ¶ 6.  Mr. DeLauri gave Kassey and Lamonaco permission to enter his home.  Declaration of Michael Kassey ("Kassey Decl.") ¶ 7.

Kassey and Lamonaco went upstairs to where Plaintiff was located and observed that Plaintiff appeared intoxicated, disoriented and smelled of alcohol.  Kassey Decl. ¶¶ 7, 9; Lamonaco Decl. ¶ 8.  Plaintiff alleges that one trooper went upstairs, followed by two or three other troopers.  Pl. Dep. 31:16, 19.  Plaintiff admits that she had not eaten and had consumed at least one Black Russian (Kahlua and vodka), half the size of a Coke can.  Pl. Dep. 19:12-24.[4] Plaintiff alleges she told one of the troopers that there was a Remington 12 gauge, 30-inch modified shot gun, 20-gauge shotgun, Glock 9-millimeter, and a beebee rifle in the closet in cases, with trigger locks, that one weapon was in the safe in the master bedroom and that there was ammunition nearby as well, all of which she turned over to the trooper.  Pl. Dep. 33:12-18; 34:6-7, 22-23.

---

[4]Mr. DeLauri told Defendants that Plaintiff continued to refill her alcoholic beverage "as needed."  DeLauri Dep. D-5.

When the troopers asked about the knife and the small laceration on the inside of Plaintiff's left wrist, she said "if I stabbed him[,] he stabbed me."  Pl. Dep. 32:24-25.  Plaintiff also said alternatively that she cut her wrist while clipping her nails during the heat of the argument.  Pl. Dep. 52:19-22.  When Defendants asked Mrs. DeLauri where the knife was located, she said it was in the kitchen.  Kassey Decl. ¶ 14.  Plaintiff also stated that she had cleaned the knife and liked to keep a clean sink; when Kassey went to the kitchen to look for the knife, he found a knife matching the description in a drawer, and the sink was not clean, rather there were dirty bowls, unclean dishes, and cigarette butts.  Lamonaco Decl. ¶ 12; Kassey Decl. ¶ 14.

Thereafter, when one of the troopers allegedly told Plaintiff that she had to go with him to the barracks or the station, Plaintiff told him that she wanted to change her clothes from her "personal night things, no underwear or anything," and walked toward the well-lit bedroom and closet.  Pl. Dep. 31:21-22, 36:5-7, 12-20, 22-25; Lamonaco Decl. ¶ 10; Kassey Decl. ¶ 9.  Plaintiff wanted to put on undergarments, Pl. Dep. 37:19, and then a pair of jeans and a zip sweatshirt.  Id. 38:5-6.  Plaintiff alleges that she asked troopers if they could turn their backs so she could change, but they refused.  Id. 37:11-13.[5]  Instead, despite the well lit rooms and closet, Plaintiff alleges the troopers stood there and watched her get undressed and dressed while they

---

[5]Plaintiff testified that she did not know how many troopers or which troopers "[took] turns coming upstairs to watch [her] get undressed and dressed."  Pl. Dep. 38:19.  She stated she did not recall much about the physical description of the one trooper upstairs and the "two or three" officers that followed him because "they all took turns coming upstairs to see [her], so [she] don't (sic) recall any individual."  Id. 31:10-16.  However, in Plaintiff's letter submission to the Court regarding punitive damages, she admits that she was required to remove her clothing in front of two troopers.  Kassey and Lamonaco admit that there were the two troopers involved in these allegations.  Kassey Decl. ¶¶ 7, 9, 11-12, 16-17; Lamonaco Decl. ¶¶ 7, 10, 15-18.  For completeness, the Court therefore addresses Plaintiff allegations with respect to both troopers.

continued to use their flashlights directly on her body at all times and in spite of her repeated requests to turn their backs.  Id. 37:4-38:9.  Plaintiff states Lamonaco allowed her to change her clothes even though he told the internal investigator that there was no need to change.  Pl. Dep. 36:22-37:13.[6]  Plaintiff admits that none of the troopers physically touched her and she does not allege that they made any inappropriate comments.  Pl. Dep. 66:9-10.

Mr. and Mrs. DeLauri were both arrested in the early hours of August 20, 2003.[7]  Rudow Decl. at Ex. C, CAD Abstract Report, Incident No. B150/2003-00009576.  Mrs. DeLauri alleges that she has had "one of the most emotional flashbacks [she] ever had in [her] entire life of somebody violating [her] body and violating [her] privacy . . . [she] had no choice with her own body or for [her] privacy what to do that someone kept a spotlight on [her] . . . [they] refused to turn their back[s], refused to give [her] privacy, and the feeling of violation [], unless you've been [raped], is something you could probably not imagine."  Pl. Dep. 38:23-39:8.

On September 1, 2005, Plaintiff filed this lawsuit against Defendants in both their individual and official capacities.  Defendants filed a Motion to Dismiss Plaintiff's Complaint in

---

[6]Plaintiff disputes Defendants' reasons for keeping her in their sight.  She alleges that Defendants watched her because there was a knife involved, which Kassey had found before Plaintiff changed her clothes, and not because she appeared intoxicated and had a self-inflicted wound.  Kassey Decl. ¶ 16; Lamonaco Decl. ¶ 17.  Plaintiff asserts that Kassey and Lamonaco did not maintain their flashlights on Plaintiff for both their protection and Mrs. DeLauri's, Kassey Decl. ¶ 11; Lamonaco Decl. ¶ 15, but rather so that they could view her changing her clothes.

[7]Mrs. DeLauri entered a guilty plea to a petty disorderly offense and was assessed fines and costs totaling $355.00 as a result of her arrest and preceding actions.  Rudow Decl. at Ex. A; New Jersey v. Linda D. DiLauri, S-2003-004397.  Mr. DeLauri entered a not guilty plea and subsequently the case was dismissed.  Rudow Decl. at Ex. A; New Jersey v. Anthony W. DiLauri, S-2003-004396.

-5-

lieu of an Answer, pursuant to Fed. R. Civ. P. 12(b)(6).  After the Honorable Anne E. Thompson[8]

reviewed the parties' papers and heard oral argument on the motion, by Order, dated April 13,

2006, Judge Thompson denied Defendants' Motion and granted Plaintiff's request to file an

Amended Complaint ("Complaint"), which Plaintiff DeLauri filed on April 27, 2006.  Plaintiff

alleged, inter alia, that Plaintiff's right to privacy was violated when Defendants forced her "to

disrobe, become naked, and [Defendants] continued to shine a flashlight upon her until such time

as she became dressed again" in violation of her right to privacy and she seeks punitive

damages.[9]  On August 25, 2008, Defendants filed a Motion for Summary Judgment arguing, inter

alia: (1) Defendants are entitled to qualified immunity on all claims pursuant to § 1983 for

violations of the Fourth and Fourteenth Amendments because Defendants had probable cause, or

an objectively reasonable belief in the existence of probable cause, to arrest Linda DeLauri, and

acted reasonably under the circumstances, and (2) Defendants did not act with the "evil motive"

or "callous indifference" required to state a claim for punitive damages.  On September 16, 2008,

Plaintiff filed her opposition, arguing that it was unnecessary for Defendants to insist that

_____

[8]The case was reassigned from Judge Anne E. Thompson to Judge Freda L. Wolfson on June 19, 2008.

[9]In her Complaint, Plaintiff alleges that Defendants (1) violated the United States Constitution and the Constitution of New Jersey by wrongfully and without just cause, injuring and degrading Plaintiff by means of excessive and unreasonable force, deprivation of liberty without due process of law, invasion of bodily security and privacy, unreasonable physical seizure, summary punishment, and equal protection of the laws, and (2) either maliciously and recklessly forced Plaintiff to disrobe in their presence, or used excessive force in handcuffing her and restraining her all in violation of the United States Constitution and 42 U.S.C. § 1983.  All of Plaintiff's claims, with the exception of claims alleging a violation of her right to privacy because she was allegedly forced to change in front of Defendants, have been previously dismissed with prejudice as to all Defendants.  See Order, dated Dec. 1, 2008.  Therefore, this Motion only addresses Plaintiff's remaining claim of a violation of her constitutional right to privacy and her request for punitive damages.

Plaintiff change her clothing in Defendants' presence[10] and continually focus their flashlights on her nude body, but rather Defendants should have called a female trooper or matron so that Plaintiff's arrest could be fully accomplished.  Defendants argue that Plaintiff has failed to cite any legal authority in the Third Circuit or any other holding that Defendants' alleged conduct violated a clearly established law, that Defendants' alleged conduct was objectively reasonable in light of clearly established law, and thus, Plaintiff's claims are barred by the doctrine of qualified immunity.  The Court has jurisdiction pursuant to 28 U.S.C. § 1331.  The Court grants Defendants' Motion for Summary Judgment.


II.    **SUMMARY JUDGMENT STANDARD**

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Kreschollek v. S. Stevedoring Co., 223 F.3d 202, 204 (3d Cir. 2000).  In deciding whether summary judgment should be granted, the Court considers "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," Fed. R. Civ. P. 56(c), and construes all facts and inferences in the light most favorable to the nonmoving party.  Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002).  The Court's function "at the summary judgment stage . . . is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

---

[10]Plaintiff now admits that she was not forced to change, but rather wanted to change and did so on her own accord.  See Pl. Dep. 36:12-14, 22-23.

A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson</u>, 477 U.S. at 248.  A fact is "material only if it might affect the outcome of the suit under the applicable rule of law. <u>Id.</u>  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. <u>Id.</u>  The burden of establishing that no "genuine issue" exists is on the party moving for summary judgment.  <u>Celotex</u>, 477 U.S. at 330.  Once the moving party satisfies this initial burden, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." <u>Fed. R. Civ. P.</u> 56(e).  To do so, the non-moving party must "do more than simply show that there is some metaphysical doubt as to material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). To successfully defend against a motion for summary judgment, a plaintiff cannot merely rely on the unsupported allegations of the complaint, and must present more than the "mere existence of a scintilla of evidence" in his favor.  <u>Anderson</u>, 477 U.S. at 252.

## III.    DISCUSSION

### QUALIFIED IMMUNITY DEFENSE TO RIGHT TO PRIVACY CLAIMS

Plaintiff does not cite to any authority for her alleged § 1983 claim for violation of her right to privacy.  In Count One of her Complaint, Plaintiff asserts that the Constitution provides her "freedom from an invasion of bodily security and privacy."  In Count Two, Plaintiff alleges that Defendants "either maliciously and recklessly forced the plaintiff to disrobe in their presence . . . in violation of her constitutional and statutory rights guaranteed by the Constitution of the United States and 42 U.S.C. section 1983."  The Ninth Circuit has recognized that "certain wrongs affect more than a single right and, accordingly, can implicate more than one of the

Constitution's commands." Armendariz v. Penman, 75 F.3d 1311, 1320 (9th Cir. 1996). The

Supreme Court, however, has held that "plaintiffs cannot 'double up' constitutional claims in this

way: Where a claim can be analyzed under 'an explicit textual source' of rights in the

Constitution, a court may not also assess the claim under another, 'more generalized,' source."

Ramirez v. Butte-Silver Bow County, 298 F.3d 1022, 1029 (9th Cir. 2002) (quoting Graham v.

Connor, 490 U.S. 386, 394-95 (1989) (analyzing a claim under the Fourth Amendment but not

under substantive due process)). In Ramirez, the Ninth Circuit reaffirmed that "because the

Fourth Amendment supplies an explicit textual source of constitutional protection against

unlawful searches, that Amendment, and not the more general right to privacy, governs the

constitutionality of the search." Id. Similarly, in this case, because the Fourth Amendment

provides an explicit textual source of constitutional right to be free from unreasonable searches,

the Court will analyze Plaintiff's claims of invasion of her right to privacy under that

Amendment.[11]

---

[11]In addition, Plaintiff's Complaint also alleges that Defendants violated the New Jersey Constitution, but fails to articulate which provisions; not does Plaintiff cite to any legal authority in her brief in support of this allegation. Article I, Paragraph 7 of the New Jersey Constitution provides a right to be free from unreasonable searches. "Although our search-and-seizure provision is similar to the Fourth Amendment of the United States Constitution, consent searches under the New Jersey Constitution are afforded a higher level of scrutiny." State v. Carty, 790 A.2d 903, 907 (N.J. 2002). While the New Jersey Supreme Court has held that the New Jersey Constitution affords its citizens greater protection against unreasonable searches and seizures than the Fourth Amendment in some circumstances, Plaintiff is unable to point this Court to any authority indicating that a reasonable search incident to a valid arrest violates the New Jersey Constitution. Moreover, Plaintiff has failed to make any argument in opposition to this motion that relates to any state constitutionally protected interest that was violated. Finally, since the Court is dismissing the federal claims in this case, even if Plaintiff could articulate a clearly established New Jersey Constitutional right and show that Defendants acted objectively unreasonable, thus, not affording Defendants qualified immunity, the Court would decline to exercise supplemental jurisdiction in this case. See 28 U.S.C. § 1367.

Defendants argue that they are entitled to qualified immunity on Mrs. DeLauri's § 1983 claims alleging violations of her right to privacy because Defendants had probable cause, or an objectively reasonable belief in the existence of probable cause, to arrest her, which Plaintiff does not dispute, and that, incident to that arrest, Defendants' conduct, in observing Plaintiff undress and redress, in light of all the undisputed surrounding facts was objectively reasonable.

A.      Qualified Immunity Standard

The Third Circuit has explained the legal framework for evaluating claims of qualified immunity:

> When an officer's actions give rise to a § 1983 claim, the privilege of qualified immunity, in certain circumstances, can serve as shield from suit.  (citation omitted).  The primary purpose of affording public officials qualified immunity, thus insulating them from suit, is to protect them "from undue interference with their duties and from potentially disabling threats of liability."  The privilege of qualified immunity, however, can be overcome when state officials violate "clearly established statutory or constitutional rights of which a reasonable person would have known."

Wright v. City of Phila., 409 F.3d 595, 599-600 (3d Cir. 2005).

Recently, the Supreme Court modified the two-step qualified immunity test it set forth in Saucier. See Pearson v. Callahan, – S. Ct. –, 2009 WL 128768 (2009). Under Saucier, this Court would first have to determine "whether there is even a wrong to be addressed in an analysis of immunity."  "If, and only if, the court finds a violation of a constitutional right, the court moves to the second step of the analysis and asks whether immunity should nevertheless shield the officer from liability."  Curley v. Klem, 499 F.3d 199, 207 (3d Cir. 2007).  The second step of the Saucier analysis asks whether a reasonable officer would have known his conduct to be unlawful given the specific circumstances and facts of the case. Saucier v. Katz, 533 U.S. 194, 199 (2001).

-10-

In other words, a defendant is not entitled to qualified immunity if, at the time of the incident, the right that was violated was clearly established.  Torisky v. Schweiker, 446 F.3d 438, 443 (3d Cir. 2006) ("This second inquiry 'must be undertaken in light of the specific context of the case.'").

However, in Pearson, a unanimous Court relaxed the rigid two-step application of the Saucier analysis.  Pearson, 2009 WL 128768 at *11. By noting that in many instances a court need not reach whether a constitutional violation is alleged to determine if qualified immunity is appropriate,[12] the Court stated that the first prong "sometimes results in a substantial expenditure of scarce judicial resources on difficult questions that have no effect on the outcome of the case. There are cases in which it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right." Id. at *10.  In addition, "[a]lthough the first prong of the first prong of the Saucier procedure is intended to further the development of constitutional precedent," the first prong "create[s] a risk of bad decisionmaking," specifically in those instances where a court decides a rather nuanced constitutional claim early on in litigation where the factual basis for the claims have not been fully developed through discovery.  Id. at *10-11. Thus, courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Id. at *9.

---

[12]The Court also noted that in these cases, where it is evident that there was no violation of clearly established law, a lower court may not give proper consideration to the more crucial question of whether a constitutional violation is alleged, creating a risk of "'uttering pronouncements that play no rule in their adjudication.'" Pearson, 2009 WL 128768 at *11 (quoting Horne v. Coughlin, 191 F.3d 244, 247 (2d Cir. 1999)).

The second step requires further elaboration.  "To be clearly established for purposes of qualified immunity, the contours of the right must be sufficiently clear such that a reasonable official would understand that what he is doing violates that right.  Karnes v. Skrutski, 62 F.3d 485, 492 (3d Cir. 1995)."  Hughes v. Shestakov, No. 00-6054, 2002 WL 1742666, at *4 (E.D. Pa. July 22, 2002).  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Saucier, 533 U.S. at 202.  The analysis of whether a right was clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." ) Curley, 499 F.3d at 207 (internal citations and quotations omitted).

Thus, qualified immunity gives a police officer room to make a reasonable mistake about the legality of his or her actions:

> The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct.  It is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts.  An officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether a particular amount of force is legal in those circumstances. If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense.

Saucier, 533 U.S. at 205.  In other words, "qualified immunity protects all but the plainly incompetent or those who knowingly violate the law."  Id. at 202.

## B.    Qualified Immunity Analysis

In light of the Supreme Court's decision in Pearson, the Court need not determine the first step of the qualified immunity analysis; instead, the Court focuses on the second step.  Qualified immunity "permits officers to make reasonable mistakes about what is lawful."  Jones, 45 Fed.

Appx. at 197 (citation omitted).  It is important to note that "even where reasonableness is a part

of the inquiry for both the constitutional question and for qualified immunity, as it is in [a

violation of privacy due to an unreasonable search], the inquiries remain distinct."  <u>Curley v.</u>

<u>Klem</u>, 499 F.3d 199, 207 (3d Cir. 2007).

> The Third Circuit has outlined the second step of the qualified immunity inquiry:

>> Having determined that a reasonable jury could find a
>> constitutional violation based on the alleged facts, we next
>> consider whether [plaintiff's] rights in this specific context were
>> "clearly established."  To conclude that a right is "clearly
>> established," "[t]he contours of the right must be sufficiently clear
>> that a reasonable official would understand that what he is doing
>> violates that right."  Thus, "[t]he relevant dispositive inquiry in
>> determining whether a right is clearly established is whether it
>> would be clear to a reasonable officer that his conduct was
>> unlawful in the situation he confronted.  Officers who make
>> reasonable mistakes as to what the law requires are entitled to
>> qualified immunity.

<u>Green v. N.J. State Police</u>, No. 06-4111, 2007 WL 2453580, at *3-4 (3d Cir. Aug. 29, 2007)

(citation omitted).

At this point in the qualified immunity analysis, the issue is no longer whether a

reasonable jury could find, given Plaintiff's version of the events, that Defendants' actions were

objectively unreasonable.  The point of the second step in the qualified immunity analysis is that

room for reasonable disagreement about the application of the law is not enough to overcome

immunity.  See Archer v. Melchionda, No. 06-2306, 2008 WL 205220, at *8 (D.N.J. Jan. 23,

2007).  Plaintiff's claim can only survive the second step of the qualified immunity analysis if,

given her version of events, there is *no* room for reasonable disagreement among reasonable

police officers as to the lawfulness of Defendants' actions: "Officers who make reasonable

mistakes as to what the law requires are entitled to qualified immunity." <u>Green</u>, 2007 WL 2453580, at *3.  Thus, the right at issue is only "clearly established" if "it would be unreasonable for officers to believe that [Defendants' actions would not constitute a violation of her right to privacy]."  <u>Id.</u> at *4; <u>see also</u> <u>Tofano v. Reidel</u>, 61 F. Supp. 2d 289, 304 (D.N.J. 1999) (stating that "if reasonable officers could believe that a certain course of conduct is unlawful but other reasonable officers could believe that the conduct was lawful, qualified immunity attaches").

Plaintiff only offers the testimony of her expert witness to maintain her argument that Defendants' observation of Plaintiff was an objectively unacceptable method of "searching" a female incident to arrest.  Although her expert, James A. Williams, testified that it is standard operating procedure for officers to have a female officer on the scene when arresting a female, he could not articulate what policy number or from which standing operational procedure it stems or where it is written.  Williams Dep. 22:10-29-25.  Furthermore, Williams only relied on the deposition of Mrs. DeLauri in making his determinations.  <u>Id.</u> 8:24-9:2.  He admits that he did not have any indication that there were several guns and ammunition within arm's length of Mrs. DeLauri, nor that Mrs. DeLauri provided the troopers with different versions of how she received the cut on her arm that pertained to this incident.  <u>Id.</u> 17:21-19:4.  These are facts that, if provided, would have been important to and/or considered by Williams in making his determination.  <u>Id.</u>  Even if the Court accepts that Mrs. DeLauri suffered severe emotional distress from this encounter, there is nothing to establish that Defendants' actions were unreasonable under these specific undisputed facts, nor that other police officers would view them as constituting an unreasonable search.  Thus, Plaintiff offers nothing to suggest that proper procedure was not followed in this case.

Moreover, an officer's reasonable search incident to arrest is legal, and does not constitute a constitutional violation.  Plaintiff does not dispute that the troopers had probable cause to arrest her.  Plaintiff, however, disputes the reason Defendants maintained their flashlights[13] on her body the entire time; specifically "they held their flashlights on Plaintiff so that they could view her changing her clothes."  Pl. Statement of Dispute ¶ 8.  Officers Kassey and Lamonco aver in their declaration they maintained their flashlights on Plaintiff for both Mrs. DeLauri's and their own protection.  Kassey Decl. ¶ 11; Lamonaco Decl. ¶ 15.  Defendants' tactics in order to effectuate the arrest of Mrs. DeLauri were objectively reasonable.

Directly before this encounter, Plaintiff admits that she handed over to the troopers a Remington 12 gauge, 30-inch modified shot gun, 20-gauge shotgun, Glock 9-millimeter and a beebee rifle in the closet and the master bedroom, and that there was ammunition nearby.  See Pl. Dep. 33:13-18; 34:22-23; 36:22-25.  Further, Plaintiff, who had been drinking, admits that she told the troopers inconsistent stories about the knife that was involved in the dispute and the small laceration on the inside of her left wrist.  Plaintiff said "if I stabbed him[,] he stabbed me," and also said that she cut her wrist while clipping her nails during the heat of the argument.  Pl. Dep. 32:24-25, 52:19-22.  After Plaintiff turned over several dangerous weapons from within the home and told inconsistent stories about a potentially self-inflicted wound, a reasonable trooper

---

[13]Neither Plaintiff nor her expert distinguish between Defendants observing Plaintiff changing her clothes with or without a flashlight.  Williams, Plaintiff's expert, opines simply that the troopers watching Plaintiff, rather than calling for a female officer, is violative of policy. Accordingly, this Court need not focus upon or distinguish the troopers' use of flashlights as opposed to observing Plaintiff without the use of a flashlight.

would have maintained a flashlight on Mrs. DeLauri for her protection and his own.[14]  For these reasons, the Court finds that a reasonable police officer would believe that Defendants' course of conduct was lawful; hence qualified immunity attaches.  Accordingly, Plaintiff's Complaint against Defendants is dismissed with prejudice.[15]

## IV.    CONCLUSION

For the foregoing reasons, the Court grants Defendants' Motion for Summary Judgment.

Dated: January 27th, 2009

/s/ Freda L. Wolfson
The Honorable Freda L. Wolfson
United States District Judge

---

[14]Whether exigent circumstances had actually ceased is not the inquiry for the Court despite Plaintiff's attempt to characterize it as such.  Indeed, as Plaintiff admits, the troopers had probable cause to arrest her and Plaintiff was placed under arrest at the time she alleges she was searched.  See pl. Opp. at Dep. 36:6-37:25.  The Supreme Court, in U.S. v. Robinson, 414 U.S. 218, 235 (1973), held that "in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment."

[15]As Plaintiff is unable to prevail on her claims, there can be no claim for punitive damages.

-16-